**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | |
|---|---|
| REALPAGE, INC., | § |
| | § |
| | § No. 1:12 CV 00398 |
| Plaintiff, | § Judge Ron Clark |
| | § |
| v. | § Oral Argument Requested |
| | § |
| ACE EUROPEAN GROUP, LTD. d/b/a | § |
| ACE EUROPEAN GROUP, | § |
| BARBICAN SYNDICATE | § |
| 1955 at LLOYD'S, and AXIS SURPLUS | § |
| INSURANCE COMPANY, | § |
| | § |
| Defendants. | § |
| | § |
| | § |

**PLAINTIFF REALPAGE, INC.'S
RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................................... 2

    A.    The Insurance Policies at Issue ............................................................... 2

    B.    The Underlying Yardi Action .................................................................. 3

    C.    Underwriters' Response to the Yardi Action ........................................... 3

    D.    The Belated Rescission and Claim for Recoupment ............................... 6

    E.    Relevant Procedural History of This Action ........................................... 6

STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT .................................. 7

ARGUMENT ..................................................................................................................... 7

I.    THE ISSUES RAISED BY THIS MOTION ARE RIPE FOR RESOLUTION ON SUMMARY JUDGMENT ........................................................................................ 7

II.    UNDERWRITERS' NOTICE OF RESCISSION AND THEIR ATTEMPT TO RECOUP AMOUNTS PAID IN DEFENSE OF THE YARDI CLAIM ARE BARRED AS A MATTER OF TEXAS LAW .................................................................. 8

    A.    The Rescission Claims Are Untimely as a Matter of Texas Law and Fundamental Texas Public Policy ........................................................... 8

    B.    Underwriters May Not Seek Recoupment as a Matter of Texas Law and Fundamental Texas Public Policy ..................................................... 9

III.    UNDERWRITERS CANNOT AVOID SUMMARY JUDGMENT BY RELYING ON NEW YORK LAW ............................................................................ 10

    A.    Texas Law Governs This Dispute .......................................................... 11

    B.    Underwriters' Claims Fail Even Under New York Law .......................... 13

        1.    The Rescission Claims Are Untimely Under New York Law ................. 13

        2.    Underwriters Did Not Meet the New York Recoupment Prerequisites ........................................................................................ 14

CONCLUSION .................................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*America's Favorite Chicken Co. v. Cajun Enters., Inc.*,
    130 F.3d 180 (5th Cir. 1997) ......................................................12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..............................................................8

*Ass'n of Counties Cnty. Gov't Risk Mgmt. Pool v. Matagorda Cnty.*,
    52 S.W.3d 128 (Tex. 2000).......................................................10

*B.P.A.C. Corp. v. One Beacon Ins. Group*,
    8 N.Y.3d 708 (2007) ...........................................................15

*Caton v. Leach Corp.*,
    896 F.2d 939 (5th Cir. 1990) ....................................................12

*Commonwealth Land Title Co. v. Nelson*,
    889 S.W.2d 312 (Tex. App.—Houston [14th Dist.] 1994, writ denied)...............13

*Del Bosque v. AT&T Adver., L.P.*,
    441 Fed. App'x. 258 (5th Cir. 2011) ..............................................13

*DeSantis v. Wackenhut Corp.*,
    793 S.W.2d 670 (Tex. 1990).................................................12, 13

*Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*,
    246 S.W.3d 42 (Tex. 2008)......................................................10

*GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim*,
    593 F. Supp. 2d 471 (E.D.N.Y. 2009) ............................................14

*King v. Unum Life Ins. Co. of Am.*,
    447 Fed. App'x. 619 (5th Cir. 2011) ...............................................8

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941)............................................................10

*Max Specialty Ins. Co. v. WSG Investors, LLC*,
    2012 WL 3150579 (E.D.N.Y. Apr. 20, 2012) ......................................14

*McKeehan v. McKeehan*,
    355 S.W.3d 282 (Tex. App.—Austin 2011, pet. denied)............................12

*Mid-Continent Cas. Co. v. Eland Energy, Inc.*,
    2009 WL 3074618 (N.D. Tex. Mar. 30, 2009) ........................................................10

*Myers v. Mega Life & Health Ins. Co.*,
    2008 WL 1758640 (Tex. App.—Amarillo Apr. 17, 2008, pet. filed) ........................9

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*,
    780 S.W.2d 417 (Tex. App.—Texarkana), *aff'd*, 811 S.W.2d 552 (Tex. 1991) .....................9

*Newby v. Enron Corp.*,
    391 F. Supp. 2d 541 (S.D. Tex. 2005) ....................................................11, 12, 13

*Pennzoil-Quaker State Co. v. Am. Int'l Specialty Lines Ins. Co.*,
    653 F. Supp. 2d 690 (S.D. Tex. 2009) ......................................................11

*Saitta v. New York City Transit Auth.*,
    866 N.Y.S.2d 62 (N.Y. App. Div. 2008) ....................................................14

*SEC v. Credit Bancorp, Ltd.*,
    147 F. Supp. 2d 238 (S.D.N.Y. 2001) ......................................................14

*Spectrum Creations, L.P. v. Carolyn Kinder Int'l, LLC*,
    2008 WL 416264 (W.D. Tex. Feb. 13, 2008) ............................................13

*The Travelers Ins. Co. v. Monpere*,
    No. 93-CV-0127, 1997 WL 9792 (W.D.N.Y. Jan. 2, 1997) ................................14

*U.S. Specialty Ins. Co. v. Liberty Partners L.P.*,
    2011 WL 5428971 (S.D.N.Y. Nov. 8, 2011) ........................................14, 15

*Warren E&P, Inc. v. Gotham Ins. Co.*,
    368 S.W.3d 633 (Tex App.—El Paso 2012, pet. granted) ................................10

**Statutes**

Tᴇx. Iɴs. Cᴏᴅᴇ Aɴɴ. § 981.001 (Vernon's 2013) ..............................................13

Tᴇx. Iɴs. Cᴏᴅᴇ Aɴɴ. § 705.005 (Vernon's 2005) ..........................................1, 8, 9

**Other Authorities**

Fᴇᴅ. R. Cɪv. P. 56 ..............................................................................8

Restatement (Second) of Conflict of Laws, § 187 ........................................11, 12

Plaintiff RealPage, Inc. ("RealPage") submits this motion for partial summary judgment that the demands of Defendants ACE European Group, Ltd. ("ACE") and Barbican Syndicate 1955 at Lloyd's ("Barbican" and, together with ACE, "Underwriters") for rescission of insurance policies they sold to RealPage and recoupment of covered amounts properly paid under their policy covering the 2011 policy period (the "2011 Policy") are invalid as a matter of law.

## PRELIMINARY STATEMENT

Underwriters claim to have rescinded insurance policies they sold to RealPage, and have demanded that RealPage repay $5 million in covered amounts properly paid to RealPage under the 2011 Policy in defense of a now-settled underlying action brought by a RealPage competitor, Yardi Systems, Inc. ("Yardi"; the "Yardi Action").  They base that claim on the false ground that RealPage was aware of, but failed to disclose, the Yardi claim at the time it renewed the policies. In fact, however, the Court need not and should not reach the merits (or, more precisely, the lack of merit) of Underwriters' arguments.  That is because the claims for rescission and recoupment are invalid as a matter of law under either Texas law, which applies here, or New York law, which Underwriters incorrectly assert controls the matters at issue in this motion.

Fundamental Texas public policy, reflected in Texas Insurance Code § 705.005, expressly bars insurers from voiding coverage on the basis of an alleged misrepresentation unless they notify the policyholder of their intent to do so **"before the 91st day after the date the [insurance company] discovered the falsity of the representation."**  That statutory 91-day period begins as soon as the insurance company has information that it believes would support its rescission, even if the insurer does not immediately realize the importance or materiality of the information.  Further, an insurer cannot avoid that fundamental state policy or the time limits of § 705.005 by generally reserving the right to raise coverage defenses at a later time.

RealPage provided Underwriters the documents on which Underwriters based their claim

of rescission on September 7, 2011.  Indeed, Underwriters themselves concede that they received documents that they later claimed warranted rescission no later than January 26, 2012.  Yet Underwriters deliberately delayed rescinding the 2011 Policy some six to ten months, until July 12, 2012, ten days after the Yardi Action was settled and dismissed.  As a matter of Texas law and fundamental Texas public policy, Underwriters' claim of rescission is time-barred.

Moreover, even if the rescission had been timely, Underwriters still would not be entitled to recoup the amounts they paid toward RealPage's defense of the Yardi Action.  Texas law will not permit an insurer to recoup amounts it pays under an insurance policy unless the policyholder expressly agrees in advance to allow insurer recoupment.  RealPage made no such agreement. Accordingly, Underwriters' belated claim for recoupment is barred as a matter of law.

Underwriters seek to avoid these two absolute bars to their claims for rescission and recoupment under Texas law, and the fundamental Texas public policies they reflect, by arguing that a choice-of-law clause in their policies requires the application of New York law to those issues.  Under Texas's choice-of-law rules, that argument fails as a matter of law.  Those rules require that the issues of fundamental Texas public policy at issue in this motion must be decided under Texas law, especially where the underlying facts have no connection to New York other than the existence of the choice-of-law provision itself.  Moreover, the claims for rescission and recoupment fail even under New York law, because (1) they were not made "promptly"; and (2) Underwriters never effectively reserved the right to recoup under the New York standards.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    The Insurance Policies at Issue

**(1)**  RealPage is a Delaware corporation with its principal place of business in Carrollton,

Texas.  Ramundi Dec.,[1] ¶ 2.  **(2)**  In 2010, RealPage purchased a Primary Technology, Media and Information Errors and Omissions liability insurance policy with a $5 million limit of liability from Underwriters for the period December 31, 2010 to December 31, 2011 (the "2011 Policy"). *Id*., Ex. A, at 3.  **(3)**  The 2011 Policy was a renewal of a policy with the same limits covering the policy period from December 31, 2009 to December 31, 2010 (the "2010 Policy"; together with the 2011 Policy, the "Primary Policies").  *Id*., Ex. B.

> **B.**     **The Underlying Yardi Action**

**(4)**  On January 24, 2011, Yardi, a RealPage competitor, unexpectedly brought suit against RealPage, alleging, among other things, that RealPage had wrongfully accessed Yardi's proprietary and confidential materials and engaged in copyright infringement.  *Id*., Ex. C.

**(5)**  Both the Yardi Complaint and RealPage's Answer and Counterclaims referenced earlier "warnings" by Yardi to RealPage not to misuse Yardi's confidential and proprietary material. *Id*., Ex. C at 3:4-7; 22:16-19; Ex. D, at 30:21-31:2; 50: 25-27.  **(6)**  Specifically, the Complaint alleged that Yardi had "warned" RealPage to "respect Yardi's confidential information and intellectual property."  *Id*., Ex. C at 3:4-7.  **(7)**  RealPage's Answer and Counterclaims admitted receipt of warnings that it "should not misuse Yardi's purported confidential information," stated that RealPage had complied, and denied any wrongdoing.  *Id*., Ex. D at 30:21-31:2; 50: 25-27.

**(8)**  RealPage defended the Yardi Action for 19 months, incurring in excess of $10 million in that defense.  *Id*., ¶ 9.  **(9)**  On July 1, 2012, the parties settled, and the Yardi Action was dismissed with prejudice on July 2, 2012.  *Id*., Exs. E, F.

> **C.**     **Underwriters' Response to the Yardi Action**

**(10)**  RealPage notified Underwriters of the Yardi Action on January 24, 2011, the day it

---

[1] "Ramundi Dec." refers to the Declaration of Kristy Ramundi, dated February 27, 2014 and submitted herewith.

received the Complaint.  Ramundi Dec., Ex. G.  **(11)**  On February 15, 2011, Underwriters formally agreed to pay RealPage's costs of defending against the Yardi Action under a reservation of rights; they did not actually begin those payments, however, until July 2011.  *Id.*, ¶ 14 and Ex. H.  **(12)**  In the course of their review and payment of RealPage's insurance claim, Underwriters issued three reservations of rights letters, on February 15, 2011, May 31, 2011 and August 26, 2011.  *Id.*, Exs. H, I, J.  **(13)** The first of those letters did not reserve any right to recoup any amount paid toward RealPage's defense.  *Id.*, Ex. H.  **(14)**  The remaining two letters reserved the right to recoup defense costs paid in connection with claims relating to the theft of trade secrets, which Underwriters contended is not covered under the 2011 Policy.  *Id.*, Ex. I at 4-5; Ex. J at 8.  **(15)**  RealPage never consented to that limited reservation.  *Id.*, ¶ 17.

**(16)**  On August 19, 2011, Underwriters asked to review dozens of categories of documents relating to the Yardi Action, including "[a]ny and all pre-litigation correspondence between RealPage and Yardi pertaining to the matter later alleged in the suit."  Tananbaum Dec.,[2] Ex. A.  **(17)**  Spencer Purkiss, the ACE claims handler responsible for RealPage's insurance claim, testified that the "only mandate" of the reviewer was to search for pre-litigation correspondence between RealPage and Yardi regarding the claims in the complaint.  Purkiss Tr.[3] at 184:2 – 185:4.  **(18)**  In response to the request, RealPage gathered the documents referenced and loaded them on to a CD (the "Disc").  Tananbaum Dec., ¶ 3.  **(19)** The Disc contained a file explicitly marked as "Yardi/RealPage Correspondence."  *Id.*, ¶ 3 and Ex. B.  **(20)**  Annexed to that file were a number of pieces of pre-litigation correspondence between Yardi and RealPage,

---

[2] "Tananbaum Dec." refers to the Declaration of Jill E. Tananbaum, dated February 27, 2014 and submitted herewith.

[3] "Purkiss Tr." refers to the Transcript of the Deposition of Spencer Purkiss held on October 8, 2013, relevant pages of which are annexed as Exhibit A to the Declaration of Robin L. Cohen, dated February 28, 2014 and submitted herewith.  ("Cohen Dec.")

including a November 24, 2009 letter from Yardi's outside counsel to RealPage's former general counsel (the "November 2009 Letter") and an October 4, 2010 letter from Yardi's counsel to RealPage's counsel in which Yardi requested information and stated in vague terms that RealPage should not misuse Yardi purported confidential information (the "October 4 Letter"). *Id.*, ¶ 3 and Ex. B.  **(21)**  That file also attached a chart describing the contents of numerous other emails and letters between Yardi and RealPage prior to the Yardi Action.  *Id.*, Ex. B.

 **(22)**  The Disc was made available for review by Jessica O'Neill on behalf of Underwriters on September 7, 2011.  Tananbaum Dec., ¶ 5.  **(23)**  In connection with RealPage's original motion for summary judgment, Ms. O'Neill submitted an affidavit confirming that during her review, she looked at every document contained on the Disc.  O'Neill Dec.[4], ¶ 4.  **(24)** After September 14, 2011, Underwriters made no further inquiry or request for any documents in connection with the Yardi Action until its July 2012 rescission letter.  *Id.*, ¶ 6.

 **(25)**  On October 28, 2011, seven weeks after RealPage provided the documentation Underwriters had requested, including the October 4 Letter upon which the claim of rescission is based, Underwriters notified RealPage that they would tender the remaining limits of the 2011 Primary Policy for reimbursement of costs incurred and to be incurred in defense of the Yardi Action.  Ramundi Dec., Ex. K.  **(26)**  Underwriters paid out the remainder of their $5 million in primary limits on or about November 16, 2011.  Tananbaum Dec., Ex. C.

 **(27)**  On January 25, 2012, AXIS requested copies of the documents referred to in Paragraph 4 of the Yardi's Complaint and RealPage's Answer.  Fleishman Dec.[5], Ex. A.  **(28)** On January 26, 2012, RealPage sent AXIS copies of the October 4 Letter and RealPage's

---

[4] "O'Neill Dec." refers to the Declaration of Jessica O'Neill, dated October 25, 2012.  Doc. No. 24-4. "Doc. No." refers to the Docket Number of documents filed in this action.
[5] "Fleishman Dec." refers to the Declaration of Barry J. Fleishman, dated September 24, 2012 submitted in connection with RealPage's original motion for summary judgment.  Doc. No. 11-3.

October 12, 2010 response.  *Id.*, Exs. B, C.  **(29)**  AXIS immediately sent those Letters to Underwriters.  Benoit Tr.[6] at 166:19-167:24.

### D.      The Belated Rescission and Claim for Recoupment

**(30)**  On July 12, 2012, ten days after the Yardi Action settled and dismissed, Underwriters belatedly notified RealPage that they were rescinding the 2011 Primary Policy, and demanded that RealPage return the $5 million in limits that Underwriters had spent in defense of the Yardi Action.  Fleishman Dec., Ex. D, pp. 1, 4-5.  **(31)**  As the sole purported basis for that rescission, Underwriters claimed that the October 4 Letter constituted a "claim or other notification of circumstance" which RealPage was required to disclose on its application for the 2011 Policy, and that its failure to make that disclosure was a misrepresentation which voided the Policy *ab initio*.  Purkiss Tr. at 249:25-250:16; Fleishman Dec., Ex. D.  **(32)**  The letter made no reference to the September 7, 2011 production of the Letter and other prelitigation RealPage/Yardi correspondence, nor did it mention that Underwriters had received the October 4 Letter from AXIS in January 2012.  Rather, it claimed that Underwriters had only "recently" received the Letter from AXIS.  Fleishman Dec., Ex. D, p. 2.

### E.      Relevant Procedural History of This Action

**(33)**  RealPage commenced this action on August 14, 2012, seeking among other things a declaration that Underwriters are not entitled to rescind their policies nor recoup any amounts paid under those policies.  Doc. No. 1.  **(34)**  In September 2012, Defendants moved to dismiss or stay the action in order to allow the parties to engage in non-binding mediation, while RealPage moved for partial summary judgment that the rescission claims are time-barred..  Doc. Nos. 6, 7, 11.  **(35)**  On May 20, 2013, the Court (a) stayed the action and directed the parties to

---

[6] "Benoit Tr." refers to the Transcript of the Deposition of Lana Benoit, held on October 2, 2013. Relevant pages of the Benoit Tr. are annexed as Ex. B to the Cohen Dec.

engage in a non-binding CPR Mini-Trial (the "CPR Proceedings") and (b) denied RealPage's motion pending those proceedings, without prejudice to its renewal.  Doc. No. 46.  **(36)** RealPage and AXIS have since settled their disputes and jointly moved to dismiss AXIS from the action.  Doc. No. 52.  **(37)**  The November 2013 Dallas CPR Proceedings did not result in a resolution of the disputes between RealPage and Underwriters.  **(38)** On February 25, 2014, the Court held a status conference with the parties, effectively lifting the stay of proceedings.

**(39)**  On December 23, 2013, Underwriters wrote to RealPage purporting to rescind both the 2010 and 2011 Policies  based on documents produced in connection with the CPR Proceedings, including the November 2009 Letter.  Cohen Dec., Ex. C.  **(40)** As before, Underwriters' December 2013 rescission letter makes no mention of the fact that those documents were previously provided to them as part of Ms. O'Neill's September 7, 2011 review. *Id.*  **(41)**  Moreover, while Underwriters base their rescission claim on the meritless assertion that every unrelated and previously resolved issue between Yardi and RealPage since November, 2009 was part of a continuous two-year claim leading to the Yardi Action, they still offer no explanation for their failure to seek to rescind their policies upon learning of that supposedly single claim in September 2011 and January 2012.  *Id.*

## STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

This motion presents the Court with the issues of (1) whether Underwriters' demands for rescission of the 2010 and 2011 Policies and for recoupment are untimely; and (2) whether Underwriters have complied with the procedural perquisites to a claim for recoupment.

## ARGUMENT

## I.     THE ISSUES RAISED BY THIS MOTION ARE RIPE FOR RESOLUTION ON SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To defeat summary judgment, the non-moving party must present facts showing a genuine dispute and issue for trial that might affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Questions regarding whether claims are time-barred by statute are especially appropriate for determination by summary judgment.  *See*, *e.g. King v. Unum Life Ins. Co. of Am.*, 447 Fed. App'x. 619, 624 (5th Cir. 2011) (statute of limitations).

Underwriters' attempts to rescind the 2011 Policy – and now the 2010 Policy – and to recoup amount they paid toward the defense of the Yardi Action have no substantive merit.[7] However, the Court need not, and should not, reach those substantive issues, because as a matter of law and undisputed fact:  (1) any claim of rescission is time barred as a matter of law; and (2) Underwriters did not comply with the legal prerequisites for seeking return of amounts paid under the 2011 Policy, and are therefore barred from seeking to recoup those amounts.

## II.  UNDERWRITERS' CLAIMS FOR  RESCISSION AND RECOUPMENT ARE BARRED AS A MATTER OF TEXAS LAW

### A.  The Rescission Claims Are Untimely as a Matter of Texas Law and Fundamental Texas Public Policy

Texas Insurance Code § 705.005 bars an insurance company from relying on a claim of misrepresentation to void a policy unless the insurance company provides notice to the policyholder that it refuses to be bound by the policy "before the 91st day after the date the [insurance company] discovered the falsity of the representation."  TEX. INS. CODE ANN. § 705.005 (Vernon 2013).  Significantly, the statutory 91-day period begins to run when the

---

[7] Neither the November 2009 Letter, nor the October 4 Letter nor any of the other correspondence which Underwriters claim RealPage was required to disclose in connection with its applications for the 2010 and 2011 Policies demand payment of damages, nor do they relate to the wrongs alleged in the Yardi Action, which consisted of claims that RealPage personnel had stolen Yardi passwords to gain access to the "Yardi Vault" to appropriate confidential and proprietary information.  *See* Fleishman Dec., Ex. B.

insurance carrier obtains information showing the alleged misrepresentation(s), not when it completes its investigation or "realizes" that the representation was material.  In *Myers v. Mega Life & Health Ins. Co.*, 2008 WL 1758640 (Tex. App.—Amarillo Apr. 17, 2008, pet. filed), for example, the insurer claimed the 91-day period did not begin until it understood the significance of the policyholder's statement during her deposition that she suffered from a pre-existing condition.  The appellate court, reversing the trial court, rejected that argument:

> Mega Life contends the 91 day period under § 705.005 of the Texas Insurance Code does not begin to run until the insurer discovers the falsity of the representation and determines the misrepresentations are material. **The statute contains no such pre-condition to the running of the 91 day period and we will not create one.**

*Id.* at *5 (bold added).  Moreover, a general reservation of rights does not constitute the "notice of intent not to be bound by the policy" required by the terms of § 705.005.  *See* TEX. INS. CODE ANN. § 705.005 (Vernon 2013); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 780 S.W.2d 417 (Tex. App.—Texarkana), *aff'd*, 811 S.W.2d 552, 553 (Tex. 1991) (reservation of rights letters sent after insurer received information it later claimed was a misrepresentation, but not asserting an intent to rescind based on that misrepresentation, insufficient to meet the requirements of the predecessor statute to § 705.005).

Underwriters received the October 4 Letter on which they based their original claim for rescission in September 2011 from RealPage and in January 2012 from AXIS.  They received other documents on which they now belatedly rely to "bolster" that rescission in September 2011 from RealPage.  Yet they did not seek to rescind the 2011 policy until July 2012, or the 2010 Policy until December *2013*.  Accordingly, RealPage is entitled to summary judgment holding that the both claims for rescission are untimely under § 705.005 as a matter of law.

### B.  Underwriters May Not Seek Recoupment As a Matter of Texas Law and Fundamental Texas Public Policy

Recognizing the severe prejudice that a policyholder may suffer if payments made by an

insurer are retroactively revoked, Texas does not permit an insurer to recoup amounts paid under its policy unless the policy expressly provides for such a right, or the policyholder has expressly agreed to allow recoupment. *Ass'n  of Counties Cnty. Gov't Risk Mgmt. Pool v. Matagorda Cnty.*, 52 S.W.3d 128, 131-32 (Tex. 2000)  ("*Matagorda County*").  The Texas Supreme Court in *Matagorda County* clearly noted the public policies underlying that rule, including the fact that a contrary ruling "could potentially foster conflict and distrust in the relationship between an insurers and its insured" and that "insurers are better positioned to handle this risk, either by drafting policies to specifically provided for reimbursement or by accounting for the possibility that they may occasionally pay uncovered claims in their rate structure."  *Id.* at 134, 136.  *See also Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental  Tools, Inc*., 246 S.W.3d 42, 45-48 (Tex. 2008) ("*Frank's Casing*");[8] *Warren E&P, Inc. v. Gotham Ins. Co.*, 368 S.W.3d 633, 638 (Tex App.—El Paso 2012, pet. granted).

The Primary Policies contain no provision allowing Underwriters to recoup amounts paid under the Policies.  Further, Underwriters have never even claimed that they sought, much less obtained RealPage's consent to any reservation of their right to recoup amounts they paid under the 2011 Policy.  They are thus barred as a matter of law from seeking recoupment now.

## III.   UNDERWRITERS CANNOT AVOID SUMMARY JUDGMENT BY RELYING ON NEW YORK LAW

Recognizing that Texas law is fatal to their claims for rescission and recoupment, Underwriters argue that the choice of law clause in the 2011 Policy requires the application of New York law to this motion.  That argument fails, both because the Texas choice of law rules which govern here (*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)) require the

---

[8] While both *Matagorda County* and *Frank's Casing* dealt with settlement payments, later courts have applied their standards to insurer claims for recoupment of defense costs.  *See Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 2009 WL 3074618 at *21 (N.D. Tex. Mar. 30, 2009).

application of Texas law to this dispute, and because Underwriters' claims for rescission and recoupment are invalid even under New York law.

A.      **Texas Law Governs This Dispute**

This motion involves issues of fundamental Texas public policy relating to a claim for rescission of insurance policies sold and delivered in Texas, through a Texas broker, to a Texas policyholder, based on an application prepared and signed in Texas.  *See* Ramundi Dec, ¶ 2.  The only meeting between RealPage and its insurers in connection with the 2011 Policy was a conference call between RealPage representatives and the Texas broker at RealPage's offices in Texas; and ACE and Barbican underwriters in London.  Ramundi Dec., ¶ 5.   Underwriters are organized under the laws of the United Kingdom (ACE), with their principal places of business in Germany (ACE) and England (Barbican).  Texas's "most significant relationship test" requires the application of Texas law to such a dispute.  *See Pennzoil-Quaker State Co. v. Am. Int'l Specialty Lines Ins. Co*., 653 F. Supp. 2d 690, 703 (S.D. Tex. 2009) ("Texas has a strong interest in the outcome of an insurance coverage dispute involving an insurer doing business in Texas with an insured whose principle place of business is Texas.").

The 2011 Policy's choice of law clause does not alter that conclusion, because under Texas's choice of law rules, it is inapplicable to the matters raised by this motion.  Those matters are not ones that "the parties could have resolved by an explicit provision in their agreement directed to that issue."  Restatement (Second) of Conflict of Laws, § 187(1).  Texas law has explicit provisions regarding the time within which an insurer may rescind a policy, the requirements for rescission and the circumstances under which an insurer can seek recoupment from and insured.  These are issues of positive law that cannot be varied by contract.  As the court held in refusing to apply a virtually identical clause contained in an insurance policy issued by an another ACE-related insurer in *Newby v. Enron Corp.*, 391 F. Supp. 2d 541,  583-85 (S.D.

Tex. 2005), "contractors in Texas [can] not contract away the duty imposed on the insurers by

Texas law."[9]  *See also McKeehan v. McKeehan*, 355 S.W.3d 282 (Tex. App.—Austin 2011, pet.

denied) (contractual choice-of-law provisions cannot govern issues of contract validity.).

   A choice of law clause is not enforceable with respect to such matters where either (1) the

application of another state's law would violate fundamental Texas public policy; or (2) the

chosen state bears no relation to the transaction.  *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670,

677-78 (Tex. 1990); Restatement (Second) of Conflict of Laws, § 187(2).  Here, both are true.

   Texas courts have not hesitated to find that choice of law clauses violated the

fundamental public policies of this state, or to refuse to enforce them when they do.  *See*

*DeSantis* 793 S.W.2d at 680 (refusing to apply Florida choice of law clause even though "Florida

has a substantial relationship to the parties and the transaction," where case involved

enforceability of agreement and matters of Texas public policy); *Newby,* 391 F. Supp. at 583-85

(refusing to enforce choice of law clause where to do so would violate Texas fundamental policy

requiring insurers to accept reasonable settlement offers within policy limits).  Texas law

imposes an affirmative duty on insurers to comply with a 91-day statutory limit for a rescission

claim, and to seek policyholder approval of any asserted right to recoupment.  Those statutory

and court-imposed rules reflect fundamental Texas public policy that policyholders must be

protected against belated claims for rescission and recoupment.[10]  The prejudice suffered by

RealPage in this case as a result of its insurers' decision to delay rescission until after RealPage

---

[9] The choice of law provision does not apply to a claim for rescission in any event.  *See Caton v. Leach Corp.*, 896 F.2d 939 (5th Cir. 1990); *America's Favorite Chicken Co. v. Cajun Enters., Inc.*, 130 F.3d 180, 182 (5th Cir. 1997) (rescission claim does not fall within "narrow" choice-of-law provision governing interpretation or construction of agreements).

[10] Indeed, the Texas Legislature has explicitly stated that insurance transactions between Texas residents and surplus lines insurers such as Underwriters are "a matter of public interest."  TEX. INS. CODE ANN. § 981.001(a) (Vernon's 2012).

evaluated and finalized a settlement under the belief that that the majority of its defense costs had been covered by insurance, provides a stellar example of the very reason for that policy.

In addition, there are no New York contacts here sufficient to support the enforcement of the New York choice-of-law clause to this wholly Texas-centered dispute. *See Newby*, 391 F. Supp. 2d 541, 583-85 (parties to a contract "cannot require that their contract be governed by the law of a jurisdiction which has no relation whatever to them or their agreement"). Underwriters' prior suggestion that the application of New York law would be "reasonable" because New York is an economic center with a well-developed body of insurance law is belied by *Newby*, which refused to apply a virtually identical clause in an insurance policy because of the lack of New York contacts. That argument further ignores that Texas has an equally well-developed and familiar body of insurance law. A surplus lines insurer, who has voluntarily subjected itself to the strict regulation applicable under Texas law in exchange for the right to collect premiums from Texas policyholders such as RealPage, should not be allowed to avoid Texas law and public policy on the basis that that law is not sufficiently "familiar" or "well-developed."[11] As in *DeSantis* and *Newby*, because New York has no connection to the issues raised in this motion, the choice-of-law clause is unenforceable, and those issues are controlled by Texas law.

**B.    Underwriters' Claims Fail Even Under New York Law**

**1.    The Rescission Claims Are Untimely Under New York Law**

In New York, "ratification will defeat even a valid claim of misrepresentation where the

---

[11] Even if the choice of law clause were otherwise enforceable, Underwriters still could not rely on it to govern a claim that the policy was void *ab initio*. *See Commonwealth Land Title Co. v. Nelson*, 889 S.W.2d 312, 318 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *Del Bosque v. AT&T Adver., L.P.*, 441 Fed. App'x. 258, 260 (5th Cir. 2011) (choice-of-law provision "logically cannot control" the resolution of a question of a contract's own enforceability, "inasmuch as the issue to be resolved is the validity of that very agreement.") *See also Spectrum Creations, L.P. v. Carolyn Kinder Int'l, LLC*, 2008 WL 416264, at *55 (W.D. Tex. Feb. 13, 2008).

party seeking to avoid the contract does not take prompt action after discovery of the alleged false statement." *SEC v. Credit Bancorp, Ltd.*, 147 F. Supp. 2d 238, 256 (S.D.N.Y. 2001); *see also GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim*, 593 F. Supp. 2d 471, 483 (E.D.N.Y. 2009) ("prompt" disaffirmation of the policy required); *The Travelers Ins. Co. v. Monpere*, No. 93-CV-0127, 1997 WL 9792, at *6 (W.D.N.Y. Jan. 2, 1997) (written notice of intent to disclaim required "as soon as reasonably possible").  Ratification depends on "whether [the] party silently acquiesced in the contract or rather promptly interposed his objections upon discovering the basis for the claim of rescission." *Credit Bancorp, Ltd.*, 147 F. Supp. 2d at 256.

Promptness is especially important in the context of insurance policies because "[s]imply put, an insured has a compelling need to know whether it is covered under an existing insurance agreement." *GuideOne Specialty Mut. Ins. Co.*, 593 F. Supp. 2d at 483.  In light of that compelling need, New York courts have found delays of several months to be unreasonable as a matter of law. *Id.* (ten months) (citing *Saitta v. New York City Transit Auth.*, 866 N.Y.S.2d 62, 63 (N.Y. App. Div. 2008) (four-month delay in disclaiming coverage untimely as a matter of New York law)); *Monpere*, 1997 WL 9792, at *6 (noting that a five-month delay has been found unreasonable under New York law).  Here, Underwriters delayed ten months in notifying RealPage of their intent to rescind the 2011 Policy while RealPage was defending and settling the Yardi Action.  During those crucial months, RealPage had a "compelling need" to know what coverage was available to it in order to adequately formulate its defense tactics and settlement negotiations.  Underwriters' delay thus bars their claim even under New York standards.

### 2.      Underwriters Did Not Meet the New York Recoupment Prerequisites

Like Texas, New York will not permit an insurer to seek recoupment of amounts paid under its policies unless it has explicitly reserved the right to do so. *See, e.g.*, *Max Specialty Ins. Co. v. WSG Investors, LLC*, 2012 WL 3150579, at *8-9 (E.D.N.Y. Apr. 20, 2012); *U.S. Specialty*

*Ins. Co. v. Liberty Partners L.P.*, 2011 WL 5428971, at \*5 (S.D.N.Y. Nov. 8, 2011).  While New York does not require the express consent of the policyholder to that reservation, the reservation must be clear and unequivocal; if it is not, it is unenforceable as a matter of law.

While Underwriters have suggested that two of their letters reserved the right to recoup amounts spent on any non-covered claim, when placed in context, it is clear that the reservation was far narrower and warned only that Underwriters might seek to allocate paid defense costs between those paid for claims covered under the policy and those paid for claims excluded by the policy. [12]  Ramundi Dec., Ex. I at 5; *see also* Ex. J at 8.  That "reservation" did not notify RealPage that Underwriters might seek a wholesale recoupment of all fees paid on the ground of a belated attempt to rescind the 2011 Policy.  As such, it was not effective to reserve the right to recoupment that Underwriters now seek, even under New York law.

## CONCLUSION

For all the foregoing reasons and the authorities cited in their support, RealPage respectfully requests that this Court (1) grant RealPage's motion for partial summary judgment and issue an Order ruling that (a) Underwriters' notices of rescission and recoupment were untimely as a matter of law; and (b) Underwriters' recoupment claims fail as a matter of law because they failed to effectively reserve their right to recoup amounts paid under the 2011 Primary Policy; and (2) grant such other and further relief as this Court deems appropriate.

---

[12] No recoupment on that basis would be permissible, as an insurer must pay for the full costs of defending against any action in which a single covered claim is alleged.  *B.P.A.C. Corp. v. One Beacon Ins. Group*, 8 N.Y.3d 708, 714 (2007).

DATED:  February 28, 2014                    Respectfully submitted,

                                             KASOWITZ, BENSON, TORRES &
                                             FRIEDMAN, L.L.P.

                                             By:  ___/s/ Robin L. Cohen_____
                                                     Robin L. Cohen
                                                     rcohen@kasowitz.com
                                                     New York State Bar No. 2254019
                                                     *Admitted to Eastern District Texas*

                                                     1633 Broadway
                                                     New York, New York 10019
                                                     (212) 506-1700 (phone)
                                                     (212) 506-1800 (fax)

                                             STRONG, PIPKIN, BISSELL &
                                             LEDYARD, L.L.P.
                                                     Greg M. Dykeman
                                                     gdykeman@strongpipkin.com
                                                     Texas State Bar No. 06325100

                                                     595 Orleans, Suite 1400
                                                     Beaumont, TX 77701
                                                     (409) 9810-1000 (phone)

                                             Attorneys for Plaintiff
                                             REALPAGE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known counsel of record via electronic service pursuant to Eastern District of Texas Local Rule 5(a)(2)-(3) and Rule 5(b)(3) of the Federal Rules of Civil Procedure, on this the 28th day of February, 2014.

/s/      Robin L. Cohen

## CERTIFICATION OF FILING OF MOTION TO SEAL

I hereby certify pursuant to Eastern District of Texas Local Rule CV-5(7) that a motion for requiring the filing under seal of materials and information that include (i) Exhibits A and B to the Declaration of Jill E. Tananbaum in Support of RealPage, Inc.'s Renewed Motion for Partial Summary Judgment; (ii) Exhibits H-K to the Declaration of Kristy Ramundi in Support of RealPage, Inc.'s Renewed Motion for Partial Summary Judgment; and (iii) Exhibits A-C to the Declaration of Robin L. Cohen in Support of RealPage, Inc.'s Renewed Motion for Partial Summary Judgment has been filed.

/s/      Robin L. Cohen

17